Morning, everybody. Before we start, I'd just like to acknowledge our staff who are working, notwithstanding the fact that their pay will be delayed. So it is greatly appreciated. Please know how much we all appreciate your efforts and not just the staff, but everybody tethered to the courts. I'll second that. Having gone through, during 37 years as an Article III judge, a couple of shutdowns before, this has perhaps been the most frustrating, given the lack of dialogue. So I want to thank our court family throughout the Third Circuit, but especially those who are here reliably today. Thank you. And I guess I add likewise, thankful to everybody. So we'll call it a case. The case is United States of America v. Giraud and United States of America v. Pena, 25-2635, 25-2636. Mr. Whitaker, whenever you're ready, sir. Good morning. Good morning, Your Honor. Thank you. May it please the Court. Henry Whitaker for the United States. And I'd save three minutes for rebuttal. Sure. So the Congress has afforded the executive branch a number of overlapping mechanisms to deal with vacancies in offices that require Senate confirmation. In this case, the executive branch admittedly took a series of precise and precisely timed steps not to evade or circumvent those mechanisms, but rather to be scrupulously careful to comply with them. Counsel, could I begin with a question that is based upon my not having seen such a representation before? But when I picked up your moving brief, what we call the blue brief in this case, I was struck by the names on the brief. On the left, Elena Haba, acting U.S. attorney, and right underneath, special attorney. And of course, the usual question that a judge would ask is which, what, who is this person, what actual position are they serving? Sure. The answer, Your Honor, is when. Certainly, Your Honor. The answer is both. An acting designation is a designation of duties. But someone who is acting in a particular role always has an underlying appointment. For example, it's very, it's typically the case at Maine Justice that the first assistant is a principal deputy assistant attorney general, for example. And that person would both hold the office of principal deputy assistant attorney general. And if there is no, if there is a vacancy in the office for which that person is second in command would also be the acting by default under the Federal Vacancies Reform Act. And in this instance, the situation is not substantively different from that commonly occurring scenario. Ms. Haba was appointed to the office of special attorney and then designated by the attorney general to be first assistant United States attorney in accordance with longstanding Department of Justice regulations. So I think it's fair to say, Judge Smith, that she is both. So are her duties and responsibilities and powers coextensive but not coterminous? Or are they coextensive and coterminous? I think they are coextensive and coterminous insofar as. So isn't that a redundancy? Well, let me just put it in terms, I think, that she is empowered by virtue of her status as acting United States attorney to perform all of the functions. And so she has full power as acting United States attorney. Yes, that's right. Is that by virtue of her designation to the position? It is so, Your Honors, by virtue of her appointment as first assistant, which by operation of 3345A1 of the Federal Vacancies Reform Act would make her the acting. Now, I would hasten to clarify that we also have a backup argument in addition to relying on her acting designation that. Before that, and we do want to hear that, but before you get to that backup argument, are there any functional differences between those two positions? Or are they just titles? Between, I apologize, between which two positions? Between the acting U.S. attorney and the special attorney. Yes, there are differences. So the special attorney appointment and her designation as spouse makes her the acting by virtue of the operation of the FVRA. The attorney general, simply by virtue of appointing somebody a special attorney, does not in and of herself have power separate from the FVRA to make someone who is a special attorney perform the functions and duties of all the offices. She has general authority under 28 U.S.C. 509 and 510 to designate people to perform her delegable functions, but that would not include, as a general matter, the ability to make someone an acting, except by virtue of the operation of the FVRA. And that's true under 3345A1, because 3345A1 says that the first assistant to the office of such officer, and such officer refers to the vacant PAS office, in this case the office of U.S. attorney for the District of New Jersey. And she has been, by virtue of her appointment as special attorney and designation as spouse, she, by operation of that provision of the FVRA, automatically becomes the acting, which empowers her to perform all of the functions and duties of that office. And there is no requirement in the statute, contrary to the argument from the defendants, that the first assistant have held that office as of the moment the vacancy arose. Congress, in the course of the legislative debates on the Federal Vacancies Reform Act in 1998, deliberately broadened the language that had previously existed in the statute for a number of years that did, admittedly, require the first assistant to be the first assistant to the particular officer who vacated the post. It seems to me, now that you've gotten to the Federal Vacancy Reform Act, it seems to me that in the language of the Federal Vacancy Reform Act, specifically 3345, that Congress expresses a strong preference that the person serving as the, quote, agency it is, be an experienced person who served in a particular office or on some other comparable federal office. That's what it seems to me when I read 3345, when I read your brief and I read the opposition's brief. Do you agree with that? I do not agree with that, actually, Your Honor. And how do you, on what basis do you express that disagreement? Well, because 3345A1 talks about the first assistant, which in Maine justice, at least, is almost always a political, and throughout the government, is almost always a political appointee, actually. In U.S. Attorney's offices? Yeah. Well, in U.S. Attorney's offices, it often is a career official, but I can tell you, Your Honor, we have to interpret the statute consistently across the entire government. Generally speaking, the first assistant is absolutely a political appointee, and I think that is an extremely odd result. But there's some language, there's language in 3345 that would reference experience for that person, 90 days within the prior 365 days. So it's hard for me to see when you look, when I look at the total section itself, because, you know, it's not the best and most clearest statute that I've ever read. I'll grant you that. There's some confusion in it. But it does say to me that Congress had a very specific intent. They wanted an experienced person to be that acting officer. Well, Your Honor, I think actually the contrast between, Your Honor is referring to the Presidential Designation Authority under 3345A3, only highlights that a similar requirement actually is not attached to A1. And that's, by the way, that's true even under the other side's argument, because their argument would allow, at main justice, the Attorney General to appoint first assistants the second PAS, before a PAS office is vacated. And that person, you know, with no experience in the agency. You say, you point to A1. I mean, A1 specifically says that the first assistant shall be the acting attorney for the office, the acting officer for the office. I mean, someone who's a first assistant. And I understand that there's, you know, sure, sometimes, I'm not going to say most, sometimes there may be a political appointment who comes in and becomes the first assistant. But that doesn't happen typically until the United States Attorney would get confirmed. Your Honor, I can tell you that in my experience dealing with these issues, the first assistants throughout the government are overwhelmingly political appointees. And Congress understood, by the way, when it enacted A1, that agencies were going to have substantial discretion over the identity of the first assistant. And there's a specific reference. What do you consider a political appointee? Because all I can tell you is that, in my experience, the appointment of selection of the first assistant in a U.S. Attorney's office is anything but what I would consider a political appointee. But that may be how we define the term political. Well, I think the principal definition of a political appointee is that it's someone who basically the agency head is empowered to remove at will. By the way, that's actually true even when the first assistant is designated as occupying an underlying career position because there's no dispute that the particular regulation gives the attorney general authority to switch that designation up as she pleases. And so even when the first assistant, even in the U.S. Attorney's office, and again, that's not necessarily the norm throughout the government, it happens to encumber a career spot. The attorney general is always empowered to switch that. And in fact, she does do that from time to time. And so I do think that that kind of at will authority makes even the designated first assistants in U.S. Attorney's office to be something akin to political appointees. And sometimes career officials do occupy political positions. But Judge Fischer, just to pick up on your point, I think the contrast between language used in A3, and there's also similar language, by the way, in B1 of the statute, where Congress took pains to specify when it wanted the type of service involved to turn on timing. And it did not include any such language in A1. When you say timing, you're referring to a duration of time to acquire experience, perhaps? Not just that, Your Honor. Periods of time under B1A? Well, absolutely. But not just that. I mean, any temporal requirement. And just to illustrate one thing, I mean, I think actually the contrast with A2 is pretty significant. Because A2, if you remember, A2 permits the president to make designations of acting officials for people who are, quote, serving in people. Serves in the office. Serves in the office. And presumably there's no requirement that that person have served in the office at the particular time the vacancy arose there. So I think it's fair to say that structurally, in A1. So you'll agree with me there that A2 at least talks about someone who has experience in the office. Well, no, actually. The person actually does not have to have any experience in the office because it's actually any PAS official throughout the government. And Marco Rubio, the Secretary of State, was designated the Archivist of the United States. There does not actually have to be any experience. That is A3. No. No, that's A2, Your Honor, because what A2 says, and this has been a longstanding feature of the statute, is that the president can designate any PAS official confirmed to whatever office as an acting official in any of the PAS offices. You're right. In the office, yes. I agree. And so I think that illustrates that there is no categorical requirement that there be some, like, level of experience associated with the person who is named. No, I don't know. We can debate that issue, but I'm just saying when I read the statute, it appears to me that experience was in the minds of Congress when they drafted 3345A. You can disagree, but. Well, I do disagree with that, and one of the reasons I disagree with that is because, and we thank this legislative history and legislative process in our reply brief, there were actually objections to the narrower language of the first assistant provision, which did say at an earlier point in the legislative process, first assistant to the office of such an officer, and there were objections to that based on the fact that that was too narrow, and Congress deliberately broadened the language to, quote, in the words of Senator Thompson on the Senate floor, to depersonalize the first assistant from being the first assistant to any particular officer, and that is a contrast not just with language that was considered earlier in the legislative process, but to how the statute was basically phrased starting in 1868 and running up through 1998, which did have explicit language. Whichever way Senator Thompson, the late Senator Thompson's comments cut, our jurisprudence relative to legislative history gives very, very little weight to what a single member of Congress says on the floor. And I'm happy to accept that. I assume that. That's for everybody. But the other side makes, and this report made a lot of legislative history, and I guess I would just- Well, legislative history generally may be a little different. A single member of Congress is what I meant. Fair enough. But, Judge Smith, I would also point out that there is, and this is not legislative history, this is comparison of actual enactment of statutes. The same shift in language you see if you compare the pre-1998 actual statute with what Congress enacted in the Federal Vacancies Reform Act. And the court should give that deliberate shift in language effect. Now, look, for sure, the 1998 statute wasn't indeed intended to clamp down on certain executive branch practices. And the principal way in which the 1998 statute did that was to abolish the executive branch's pre-existing practice. I agree with that statement that you've just made. And it does present one of those so-called 30,000 feet questions. And this, mine, is that. Would you concede that the sequence of events here, and for me, they're unusual. We could recite them if you wanted to take the time. Would you concede that there are serious constitutional implications to your theory here, the government's theory, which really is a complete circumvention, it seems, of the Appointments Clause? I don't think – I do disagree with that, Judge Smith. I mean, the Office of the United States Attorney is an inferior office that is fully – that – Well, we're – under Article III, we're an inferior court, too. So I – you know, we're used to denigration of that kind. Well, I don't mean to be – I don't mean it to be denigrating. No, no. The founders apparently did. Well – Like superior. All inferior means is you have a boss who's not the president. And that's true of a United States attorney. But here, there's no question that Ms. Haba was appointed by the Attorney General. So any Appointments Clause problem has been fully satisfied by the fact that she has an AG appointment. And the other side really hasn't seriously – And what are the limits? Are there any limits to that AG appointment? Certainly, there are many, many limits, Your Honor. Such as? Well, for example, I mean, Ms. Haba serves under the FVRA, subject to the FVRA's time limits. And right now, she times out in February. And if February reaches us and there has been no – How does she get to February? Some would say she timed out in calculation in August. Oh, I actually don't think that there's any dispute that under the FVRA, she gets until February, Your Honor, because even spotting the defendants, their view that the only relevant vacancy occurred on January 8th, under 3346 of the FVRA, that period was told when her nomination was withdrawn. And she gets a new 200-day period measured from July 24th. Let me ask you a question on 3345B1 – B1, capital B, okay? Does that language constitute a nomination bar that would prevent anyone who had been nominated from serving as an acting officer? No, certainly not. Why not? Because the language, Your Honor, is phrased in the present tense. And so what that language is referring to is a nomination that either is currently pending or a nomination that is submitted during that person's acting service, because it says and it applies to when, quote, the president submits a nomination of such person to the Senate for appointment to such office, not submit kid. And when Congress uses the present tense, we should presume that that has effect. And that's true under the Dictionary Act and the Supreme Court's case law. And it doesn't include the past? It doesn't include the past. That's right, Your Honor. Okay. But I think it would include – it would nonetheless – In the future, doesn't it? It certainly would include – well, it would include a nomination that's submitted during the person's acting service. And one important point that sort of cuts through our FVRA argument is that a vacancy is a continuing condition. It doesn't exist at just the moment when a PAS officer vacates. But the submission occurs once at a discrete moment in time, doesn't it? Well, sort of yes and no. I think that if you look at – That kind of covers the field. Well, I mean, just to be more precise, I mean, if you look up submits in the dictionary, Your Honor, you will find, at least in Webster's third, a definition that says something like to send or commit for consideration. And I think it's the latter bit that what we have here, to commit for consideration. And so if you have a nomination that was submitted in the past and the President has not taken steps to withdraw it, he is continuing to commit that nomination for consideration present tense. And so it's fair to read the – This is present perfect tense. And I thank my eighth grade English teacher, Ms. Lutz, whom I actually had a crush on, if I have to admit it. But I do remember a few of the things she taught me. And I think if you construe it to be present perfect tense, I mean, that's game over for them because – And I think the U.S. Supreme Court's decision in the Hewitt case proves it. Because in the Hewitt case, what the Supreme Court was faced with was a statute that referred to a sentence that has been imposed. And the question was whether that language applied to a sentence that had been vacated. And the Supreme Court said, no, no, no. It does not apply to a sentence that has been vacated because has been imposed is phrased in the present perfect tense and it refers to an event that occurred in the past that has continuing significance. And under that framework, even though a nomination may have been submitted in the past, once it is withdrawn, it is void and cannot result in confirmation. So it does not have continuing significance under the Supreme Court's reasoning in Hewitt. Let me take you back to February of next year. So let's assume the clock's running in February. Can Ms. Chabot resign from the position and be reappointed or re-designated by the Attorney General for another 200 and some odd days? No, she cannot be re-designated under the FBI. Unless there is – a nomination is submitted in that time. And if there is a nomination that is submitted between now and February or even one submitted afterwards – It ain't her nomination. No, no, it could not be her nomination. She is not eligible to be both the nominee and the acting. It would have to be the nomination of someone else. Wouldn't that nominee have to be confirmed? No. We're still dealing with the vacancy. The vacancy is the vacancy that Selinger created on January the 8th. No, no, the nominee would not have to be confirmed. Oh, I'm sorry. The second part of this question, the Selinger resignation does create the vacancy we're talking about, does it not? Well, we're willing to assume that for purposes of this case. I don't think – we did take the position below that the vacancy was created when she resigned on July 24th. Nothing about that dispute is material to this appeal, and we are certainly perfectly willing to spot the defendants' view that the vacancy, the only relevant vacancy occurred on January 8th. The court does not need to decide that issue. But it would absolutely, under 3346, Your Honor, the time would be told by a pending nomination and even a second pending nomination, actually. And I think that specifically contemplates that there's nothing unusual about the current status quo in the District of New Jersey where you have an acting official who is serving and there is no present nominee. That's a circumstance that Congress explicitly contemplated would occur under the Federal Vacancies Reform Act. And, you know, we haven't talked, Your Honors, about the delegation argument. I'm anxious to make sure that I've answered any of the court's questions about delegation that you see that my red light is on. Well, are there any powers that are delegated to Ms. Hobbs that are not delegated to a confirmed U.S. attorney? In candor, Your Honor, our view of that is no, but that's actually not, I think, does not detract from our position. I mean, there are significant differences, and, again, we have to interpret the statute broadly as it applies across the entire area. Has the department ever taken that position previously? That is, to again use the two words I used toward the beginning of your argument, that not only are the duties and powers of the special assistant coextensive but coterminous. Oh, absolutely. We took that position in the Arthrex case, Your Honor, and we actually won that in the Federal Circuit in very similar circumstances. But that didn't involve a United States attorney's office. Well, no, Your Honor. I said, has the department ever taken that position? Well, we defended the legality of the situation at the PTO there, and we took the position that the Commissioner of Patents, who was delegated all of the powers of the PTO director, which was a vacant PAS office. And you had a vacancy in the director position and a second vacancy. And the deputy was also vacant. And there was a standing delegation in the PTO that said, in that circumstance, the Commissioner of Patents takes over. And that is longstanding practice in the executive branch. For example, in the Biden administration, Brian Boynton was acting at the beginning of the administration, and then after he timed out under the FDRA and there was no nomination, he ran the civil division for much of four years, purely by delegation from the Attorney General. And there was no, as far as I'm aware, challenge to his appointment as somehow being unlawful. And that's because when the Attorney General delegates someone the duties associated with a PAS office, that is a distinct kind of service from acting service under the FDRA. And there are at least two significant distinctions. Number one, when the Attorney General delegates powers, she is limited by the delegation statutes themselves, in what power she can delegate. For example, we point this out in our reply brief, the Attorney General cannot delegate to a subordinate the power to appoint inferior officers, which by the constitution must be done personally by the head of the department. Another example, and even apart from that, U.S. Supreme Court recognized in 1974 that there are other limits in statute on the Attorney General's broad authority, otherwise broad authority to delegate functions under section 510. In that case, it was the wiretap statute. And there are many other examples that exist in the statutes today. Like for example, the Foreign Intelligence Surveillance Act warrants. So there are limits there, but even apart from that, there are limits that the FDRA imposes because we have no quarrel with this. Section 3347 of the FDRA would prohibit and does prohibit the Attorney General by delegation to make someone an acting official. And that's, but that's not what we've done with respect to the delegation piece of our case for Ms. Hobart. And it is often the case and Congress recognized this in the legislative history itself, that PAS offices have purely delegable functions. And, but Congress recognized that that nonetheless, when there is a vacancy in a PAS office and the FDRA time limits expired, we can keep the lights on and we can continue to have officials exercise the functions of those offices purely by delegation. As this panel struggles to get to what Congress intended, what the words mean as best we can. Separate from the district court's interpretation of FDRA sections 3347 and 3348, the district would also look to a number of canons of construction. And I won't mention them here, but I believe that you have stated in your opening brief that those canons, at least those invoked by the district court, in your words, cut decisively in favor of the government's understanding of the statutory scheme. Those I'm pretty sure were your words, but I don't recall that you went on to explain how they do. I, the, the, the related canons, the canons, I think that were referred to the surplusage canon, the general specific canon, how you want to say, explain what I don't think your brief did was how they, at least how they were not helpful. Well, I think that, I mean, I think it's fair to say that one of the main canons the district court relied on was the general and specific canon. I think that's true. There's no, but there, there's no problem with regard to that canon because there isn't a conflict or even superfluity in, in, in the relevant statutes. Your Honor, these are statutes that work together as an integrated whole to provide the executive branch with a number of options to take advantage of when PAS offices are vacant. Those statutes have, have their own independent requirements. Okay. Don't you find it strange that Congress said you can, the attorney general can appoint a person as interim attorney general only for 120 days. Then you go to the FVRA and you're, you're finding a way to circumvent that 120 days. Isn't that a conflict itself? I don't think so. And your Honor, Congress recognized in the FVRA itself that there could be office specific statutes that exist alongside the FVRA. And that's been true for, but I don't know how much more clear you can be than say 120 days is a limit. Well, your Honor, we obviously disagree with, with that. I mean, we do think that you can have successive 120 day appointments in certain circumstances, but even spotting that view, I mean, there still would be, it's, there's still, and I take it that the other side does not dispute that, that the F546 is not the more specific statute when somebody initially is, when Deacus Tana, for example, became acting United States attorney on January 8th initially. And if it's not the most specific statute, then it's very difficult to see how it could be a more specific statute simply because a several months have elapsed. And I would, I would commend to your Honor, the Hooks case in the ninth circuit, which recognizes that officer specific statutes can exist harmoniously alongside the FVRA. And it's not unusual actually for the executive branch to select the option or in this to select the option of one statute or the other. And that just means that there are distinct ways of filling the vacancy each with their own distinct benefits and drawbacks, but neither is superfluous with any of the others. And still less, is there any conflict between those two things? And we have no quarrel with the fact that like, yes, if the attorney general elected to use the interim appointment statute, that would supersede an FVRA vacancy. But it's equally true that if the president, for example, as happened here removed an interim United States attorney, then that would turn the FVRA back on subject of course, to the FVRA time limits and eligibility limits. And there are limits. We are not asking for a limitless power to designate acting officials. We colored inside the lines here. The lines are complex. And that's why we had to take those complicated steps. What are the outside limits under your matrix? Well, for example, under the FVRA, you are limited by time. You are limited by eligibility. If the president wants to designate someone under A2 or A3, there are very specific eligibility limits. You cannot have someone be both the acting and the nominee, except in a very narrow circumstance where somebody was the first assistant before the vacancy arose and served at least 90 days. And we have no quarrel with the fact that as long as she is the acting, she is not eligible to be the nominee and the acting. If we submitted her nomination again, she would have to cease her acting service. And there are substantial limits. With respect to the delegation piece, as I mentioned, there are limits on the attorney general's authority to delegate functions. I've been discussing those. And also you cannot, as far as the FVRA is concerned, you cannot delegate by virtue of the attorney general's general vesting and delegation statutes, all of the functions and duties of an office in an acting capacity. And what that means is you can't give someone the title of acting simply by delegation and you cannot commit to that person any exclusive functions associated with the office. And that's true. And I think that's true by virtue of the plain language of 3, 3, 4, 7, a, which speaks of making the FVRA, the exclusive means of making someone acting, which means all of the functions and duties of the office. And that's not what a delegation does. Let me just be clear on one thing. So under the delegation theory, is there an expiration date? Is that the February date you're referring to earlier? No, no, there isn't. There would not be, there would not be a time limit on, on performing functions by delegation. So she could serve in that capacity at the, at the pleasure, we'll say of the attorney general. Yes. I mean, but she would be serving in a different capacity than what she's serving. She's doing the same thing. She'd be doing the same job, maybe with a different title. Well, well, but I think we would, we would take a great risk. I think if we did that, that there could be some court that could conclude that there, there is in fact a delegation, an exclusive function. Like our view is that there are no exclusive functions, like cards on the table. That is in fact our view, but there, there have been suggestions in this case that, oh, well maybe 18, 18 USC three, seven, three, one, which is about interlocutory appeals may be an exclusive function. And I suppose that if we made her, if we were solely relying on the delegation theory, we would take a risk that that kind of a function might be called into question at some later point. And that's why the executive branches practice is not as by default to have these offices performed solely by delegation. We can extend a considerable effort to install acting officials and yes, to try to secure Senate confirmation of those officials as is shown by the confirmation a couple of weeks ago of 16 United States attorneys. So we are not circumventing the statute. We are applying the statutes as Congress wrote them, which are complex and sometimes require us to jump through a lot of groups to get there. No doubt. Thank you very much. Good morning, Mr. Lowell. Good morning, your honors. And may it please the court, I am Abby Lowell. I am arguing on behalf of both the police. We're serving three minutes for amicus as the court has ordered. I appreciate the time today. I think the best thing I can do is start answering the same questions that you asked. Learned counsel from the other side and I'd start therefore with the one that judge Smith stated, when you asked, looking at the titles on the appellate brief, who is Ms. Habba as I am standing at the podium today. And I think the answer is, as I've now cobbled it together, the government sites, a camera of seven different statutes that they alternate depending on what they are trying to accomplish to call her the interim U S attorney and acting U S attorney, the first assistant U S attorney, or a special attorney and to put it in context, to answer the question that you asked momentarily ago, judge or staff. But when you ask what are the outside limits of each of those counsel conceded that in one of those paths, the delegation path, there is no limit. There is no outside limit. So how can you construct the very carefully crafted set of statutes, which presumes that you're trying to put somebody in place with the advice and consent of the Senate. We'll come back to that in one second to say that there is some way that the attorney general can appoint somebody to the important job of U S attorney forever, or at least as long as the president's terms fits. You also asked judge Fisher about cannons and then so did judge Smith. Well, one cannon of course, is you don't take a statute completely by cobbling together a line or word. You do look as this court said in the paper versus attorney general case for the meaning of the statute, looking at its context in its broader context of its purpose. For example, with that in mind, I think there are three things that the court should look at when it is applying the statutes in this case. One is that the appellate's approach undercuts the importance, constitutional preference for high ranking officials to be placed in their positions only after there's advice and consent. Judge Smith asked about the appointments clause in this case that comes through because of the statute that Congress enacted to provide that there would be advising consent in this appointment. The second, as you said, judge Fisher, is that another of the purposes and the context is to find somebody who has some degree of experience in functioning in the capacity of U.S. attorney. And the third is to avoid what happened in this case. Again, the trigger in 1998 was what the justice department tried to do in taking assistant attorney general Bill Landley and turn him into a forever appointment, which was exactly the reason why Congress revisited it. As to this question, both two of you have asked that purpose of finding experienced and transitional people actually works in both A1, A2, and A3. In A1, it is an automatic function of the first assistant. And as judge Smith, you asked what's political. Well, let's just use this case. Vikas Khanna, who immediately took the role of acting U.S. attorney upon the resignation of U.S. attorney Selinger had been in his office for 12 years. And not just that, it's interesting that in this case, he was allowed to maintain in his non-political role for an additional six weeks after the president took office. Contrary to counsel statement, I've practiced as much as you have probably heard cases. First assistants are not political appointees. They tend to be across 93 U.S. attorney's offices, people who are from that office. A2 and A3 serve different parts. A3 does incorporate the experiential and continuity. A2 though, at least puts meat to the other purpose of this construct, which is to put the Senate involved to make sure that somebody is holding office with some check or balance of the other branch of government, which of course happens because it has to be another presidentially appointed Senate confirmed people. So you can strip out any words you want, but if you look again, not to legislative history, as you said, Judge Smith, as to what Senator X said on one portion of the debate, but as to the purpose as to the context, which is important legislative history, you can step back and see that they're constructing this. I don't know. Jerry rigged a way to get this Habba to be in power for the entirety contradicts. The other thing that you asked besides the outside limits that I had addressed before you have any other questions that would go to our position is that on the delegation part, the government points out that somehow this case, Arthrax saves the day for them where in fact it does not for two reasons. One is 3347 does not speak in the phrase duties and functions the same way 3348 does. In fact, 3348 has in its first three words in this section to put it in an easier way to frame 3347 says, if you are improperly appointed, you can't do anything with 3348 says, even though you shouldn't have gotten that power and you shouldn't have been delegated that power. There are only certain things which can't be ratified. What makes this an interesting point from the government's point of view is then they go backwards and confess that there's nothing that is not delegated in the appointment that they want to have Ms. Habeser putting aside that that's illusory. It still means that 3348 and 3347 are not contiguous, which this court also confirmed. I can't ever say the name can catch my wits and your concurrence and concurrence on that. So what, what's wrong with the government's argument that the attorney general has the authority to appoint her under five 46. I didn't hear the, what's, what's the problem as it were, or do you take issue with the government's position that we have delegation authority under five 46? There's, it wouldn't be delegation. It would be a different mechanism. Five 46 gives the attorney general the authority to put somebody in as interim us attorney for a very specific point of time, 120 days and has a disqualification of that person is also going to be the person that functions in that fashion for that period of time. That's an interim us attorney. You'll notice in the brief that you asked about, look at the cover sheet that judge Smith asked. She's not claiming to be the interim any longer. That's a phrase she used below. She is now asking the court to confirm that she's two things at the same time in acting and a special. So five 46 can come into play after the automatic function of the FVRA, whether it be a one, a two or a three. And that becomes vacant because you have the attorney general has that power, but only for 120 days. And as one of you asked, it's not the opposite. You can't after you have exhausted five 46, then put in 33 45 because by definition, 33 45 kicks in when there is a presidentially appointed Senate confirmed vacancy, which is not the same as when an interim who has none of those things have left her job, which is the case. Let me ask you on a delegation question. Do you agree that the attorney general can delegate some functions and duties? In this case, the Ms. There's no doubt that the attorney general by way of delegation can do what attorneys general have done for decades. Where do you, where do you draw the line? The line is drawn in that you cannot delegate all the functions of the attorney. Which part it's been very elusive, both, both in the briefs and questions to Mr. Whittaker, what functions can't be delegated? Can I flip it and say, let's start with the text of the statute, which says to supervise legal proceedings, to be able to be involved in the phrase of that. What is a legal proceeding? It's a case. It's an investigation. It's the way the statute has worked forever. You point somebody for a specific purpose. It is for the case of, maybe it's for a series of cases. I now need a special attorney as the justice department has recently done in the appointment of an individual to be the mortgage fraud. That is a specific kind of legal proceeding in which those delegation statutes work. There has never been, except for the way this administration is constructing and asking you to delegate all the powers of a U S attorney by making that person, the delegable 515 special attorney that's never happened. And it's not even the words of the statute. Could the attorney general in this case, a delegate to Ms. Haba the right to prosecute all criminal cases arising out of the district of New Jersey. I think you could probably get that part done, but that's not what's happened here. It is. She can do criminal. She can do civil. She can appoint people. She can designate which offices people can be in. She can give speeches as the chief law enforcement, federal officer in the district of New Jersey. You and I could go through a whole list of things that a U S attorney does, which is not consistent with the concept of being a special attorney. It's you would concede. However, that the 515 special status is phrased broadly within the statute. When it refers to specially appointed, it talks about being authorized to, to proceed to conduct any kind of legal proceeding. That's pretty broad. Any kind of legal proceeding. Okay. That is a broad phrase. Any kind of legal proceeding is a broad phase in graduate proceedings and proceedings before committing magistrates, et cetera. Yes. Yes. I understand that and agree that is a broad phase taken out of the context of both its history practice and what's done. The council has conceded something very important standing at this podium, that they are saying that all the powers of a U S attorney are delegable from that 515 or a combination of 509, 510 and 515. That's what makes this an unusual and we believe in improper delegation. You can supervise legal proceedings, but to make that three words mean that you can do all the other things of a U S attorney is their concession that she is acting as the U S attorney by way of the delegation that gives her the job, but without the title. So in their interpretation of this delegation function, the only thing she doesn't have is that certificate on the wall that says United States attorney for the district of New Jersey, but for that, and what they used to call the gravitas of having that title, she can do everything. Now the answer to that question that it cannot be what that delegation is, is your question. The question is if that's the case, a one is superfluous. A two is superfluous. A three is superfluous. Five 46 is superfluous because they have now constructed a way in which somebody never has to be nominated and confirm and conserve all the functions of a U S attorney forever. And Mr. Lowe, where does 33 47 fit in here in this picture? In this case, what would mean is because they violated a one, because they violated, she didn't qualify for a two, because she doesn't qualify for a three 33 47. Now says the actions that you have taken are null and void. They are null and void, especially because in 33 47 judge, that B section is the one that specifically says you cannot rely on the general delegation authorities of an office is not what we mean in 33 45, six and seven. It has to be something that is expressly given. So what 33 47 does is say, this was not expressly given. You don't have the authority to act. And that's where they're basically conflating the definitions in 33 48 to 33 47 come about. When you just enumerated the various violations that the government had committed, you began with 33 45 a, and I don't think I've talked a lot about that. So I thought if you could explain what that violation specifically is. The entirety of 33 45 a was based on a structure that based on the statute of limitations, which basically did not have the attorney general had any role. 33 45 a one and a one was specifically what I had in mind. I'm sorry. I didn't state it that way. Okay. Then an a one, the idea for both continuity. And as one of you pointed out, the idea of having something with experience is a shell point. It's automatic. It doesn't require anybody to do anything at the moment that the presidentially appointed Senate confirmed vacancy occurs. That was in January of 2025. But was the position taken by the district court consistent with the text? Or let me put it another way. Was it expressly stated by the district court that it had to be the incumbent first assistant in a way because the district in a way, well, I mean, let me take the, what I'm getting at is couldn't Congress when it drafted the statute of clarified that in such a way that it had to be the person in the position at that discrete point in time. I think Congress did when it changed the phrase earlier on from any person can take that role to then any officer to any, the first assistant of the office of the officer. The government wants to take that change to mean that it broadened the ability of a one to encompass somebody, not at the moment of vacancy. I think the natural reading of that change in the statute is 180 degrees opposite. When somebody is the first assistant to the office, what it is saying is in the shell part, the reason that this habit doesn't qualify a one because somebody else did vacancy, but just kind of was the first assistant at the moment that the presidentially appointed Senate confirmed us attorney vacated the office. It didn't happen a month later. It didn't happen three months later. It happened instantaneously. There was a person in place. That person was the first assistant. And that's why the shall came into being. If the government is correct, that anyone applied any time after that first person resigned at any point, then again, in the Canon, you've made a two superfluous, you've made a three superfluous their argument back to us. Well, it used their phrase. It's not entirely superfluous. And then they point to the possibility that both the principal officer and the deputy at the same time are our Senate confirmable people such that, okay, but as we point out in our response to their argument, their hypothetical would basically mean that it's superfluous 98% of the time. So to answer your question again, judge Smith, if you're asking why a one doesn't work here, it doesn't work because there's a difference between one, two, and three, two and three gives the president power. A one doesn't give either the president or the attorney general, the power when that vacancy occurs, it's a shall and it's automatic and it was purposeful and it worked exactly the way it was supposed to work in this case. Then when the president using his authority properly had not to want that automatically designated first assistant U S attorney, by taking that person out, the president had a five, 40, the attorney general had a five 46 way of doing it. She did it. She appointed first Mr. Giordano and then Ms. Haba that exhausted that statutes 120 days. And then having done that, there was no longer that presidential appointed Senate confirmed vacancy in which 33 45 a could come back through a one. It just can't happen. What about the quote nomination bar and B one B where, where does that work in here? If at all? Well, it works to put it in an opposite fashion. I would say that what B one a, or you're saying the B, the B function works to say that even a one, there can be a disqualifier for an a one first assistant ascending to the job of U S attorney. If two things, one is that, that person is not nominated and two hasn't served for at least 90 days. Right? So there's no inconsistency. No one has ever, we have never argued that there's no limitation to a one, but it's a very narrow one. Right. And that was Congress's intent, because when there was a greater one, the number of days that's an a two and a three. Well, there's the fact that, so there's the fact that Ms. Hobble was nominated once preclude her from fitting into 3340. It does for the reasons that can be best summarized by reference to the Supreme court's case in Southwest general. Even though the government wants to say that in that case, the Supreme court didn't squarely address it. It kind of did. And the reason it did was because the sequence of events are identical to this case in that case, in which there was a person submitted, it was returned, it was resubmitted. And in that regard, the person who brought the challenge was challenging in the period in which it quote was not pending. The government wants to make some myths to be the equivalent of the word pending. I don't know where they get that from, except by saying the S at the end of submit equals pending. But we know that's not the case because the Supreme court had the exact same phrase and said in effect, two things, one, that this was happening at the time, similarly to Ms. Hobble. And here's something else that you would know, even though they want to diminish the impact of Southwest general, if they were right, the Supreme court issued an opinion that was theoretical because the challenge that occurred by that person, that person would have black Supreme court issue opinions that are theoretical. Theoretical is not the right word. It would have been. I'm glad the chief justice isn't here right now to hear that. When you see him apologize. I'll see him soon. Thank you. The answer to your question is not theoretical. What we know is Southwest general applies because if it isn't in the exact same frame that makes her unqualified under that provision, then the Supreme court would have on its own said, by the way, this person no longer has standing because it was quote pending at the time. And more importantly than that, they pointed out that in the sequence of events that occurred in this case, neither the government in that case, even asserted that pending was the same as submits and said, in its opinion, the court of appeals accepted that the timing made no difference. And the Supreme court said, we also concur at the time he made no difference. If we conclude that she's properly in place as the acting United States attorney, when do you calculate that her term would expire? If you go through and say five 46 no longer applies, somehow she got to be a one, even though she's not a two and a three. And her submission to the Senate did not disqualify her. And if you get through all those hopes to say that she's still acting, it's a hard hypothetical because I've just jumped over six different hoops. Having said that, I suspect that you'd have to now put into effect the temporal limits on anybody serving in a two and a three, but it gets you a far way to be able to get you there. It doesn't. In the acting part, in the acting part, she has a limit, 210 days, or perhaps it was 300 if it existed at the time of the transition. What about the withdrawal provision? What about the withdrawal provision since her nomination was withdrawn? Does that give her another 210 days? No, I think it disqualified her from the get go. And so she doesn't get that 210 days.  I'm going to assume that that's, we concluded the contrary on that. Could she get another 210 days until February? I don't think the trigger to get another 210 days is the withdrawal of her nomination as the way the section of 3346 would work to prevent that from  But it doesn't obviate that they want you to parry between your idea that somehow she could get 210, stacked on 210. And I don't know why there wouldn't be another 210. And then them coming to you and saying, on the other hand, she's also the special attorney who doesn't have any time limits whatsoever. Mr. Lowell, I don't know that the question I'm about to ask has import for the case before us, but we will have to write an opinion and it may be important to us in the process. We have, as you know, received a number of amicus briefs and the amici have been helpful in this case. The Cato amicus brief is generally congenial to your position. The brief identifies one point though on which they disagree with the district court. And it may be that the government, that this is an important point, even if not in this case for the department. According to the district court, A1 is triggered, and this is quote, only when the Senate confirmed officer leaves office, peren and not also when an acting officer leaves office. Cato contended in their brief that would prove too much. You have a position. Do you agree? Well, he, they wrote that. I got confused by the parenthetical. So I can come back to each person arguing their theory of how you can cobble together parts of the 33 series statutes are coming up with a way to avoid the most natural, not just reading of a one, but the reason it was put into effect and its history from going from any person to the office or to the office of the officer. And so my view of the Cato, I haven't really thought about it as in depth as you have just asked the question. I might need to think about it to see if it matters in your having to deal with this issue, which I don't think it does. I think you're an I are saying it may not have anything to do with this is that I think it gets to, it may read too far, but you don't have to get there because a one is not available in its own terms and it's for own purpose and its own context. I'd like to think a moment of whether or not that parenthetical changes anything I just said. Thank you. I'd like to then given that we expired again, Amicus said that they could get a few seconds and I would like that. Thank you judges. Morning, Mr. Pierce. Good morning. May I please the court James Pierce, the association of criminal defense lawyers of New Jersey, the district court disqualification of Ms. Pierce for two principal reasons.  she is not eligible under the federal vacancies reform act because she was not the first assistant at the time that they can see a rose and because of her contemporaneous nomination to the same position. Second, the attorney general's purported delegation squarely conflicts with the F VRA exclusivity provision and a contrary holding would eviscerate that statute score purpose. More broadly, the executive branches acts of circumvention in this case, I'm trying to get around three different statutes that provide adequate safeguards to the, the filling of the U S attorney's position are troubling that position as then attorney general, Robert Jackson said more than 80 years ago has more control over the life, liberty, and reputation than any person in America. Now judge Smith, I'd actually like to pick up with the question that you just asked about the Cato brief. I'm not here on behalf of Cato, but I do think that's an important question. And that got you the interpretation of the language in three, three, four or five a one, the change from to the officer to, to the office of such officer. And I think that what the Cato brief provides is an explanation that ultimately has no impact on this case, but best squares what Congress was trying to do. And I think that was to put in place a rule that first assistants have to be placed at the time of the vacancy, but that also can occur when there is a valid acting or interim. So if that valid acting or interim is then has to resign or dies, you could have the first assistant in place at that time, take that position. It does not mean however, what the government argues, which is that there's just this fleet, excuse me, free floating rule that the first assistant at any time during the vacancy can come in and fill the position. And that also the explanation that Cato provides squares with what Congress was trying to do at the time. It is true. There was some dispute about whether there would be an adequate reservoir, so to speak of experienced individuals to come and fill the office. And at the time of the 1998 legislation and that the particular debate, there was the first assistant rule. And then there was the rule that it could be a Senate confirmed individual. What was added was a three 33, four or five, a three, the provision that allows for a sufficiently senior individual who has served in the agency for a certain number of days. That would give the president the kind of flexibility if he or she thought the first assistant wasn't of the sort that would carry out his or her agenda and could then go into what are presumably hundreds, maybe more officials who could then fill that role under a three. But that change did not broaden and permit this anytime, any available first assistant rule, which would swallow a two and a three for the reasons that the district court gave below. I'd like to briefly just focus on, well, my time is up. May I make two other quick points. One is the reliance on executive practice that the government makes. And there are a couple of responses that I think are important to put on the table here. One is none of the examples that I heard the government say had to do with us attorneys, right? Us attorney is a role that goes all the way back to the 1789, essentially the founding and the judiciary act. It predates the department of justice as a whole. And so whatever executive practice may have built up is entirely distinct from what you do with us attorneys positions, nor has Congress acquiesced. So I think the government at page, I think it's 37 at that brief site, a 2009 statute that, that that refers to acting or temporary capacity, but in so doing, it blows right by what the language actually says there. There was Congress is saying no payment for individuals who essentially have overstayed their time. That's not actually the essence. That's Congress using one of the fuel tools in its toolkit to push back the appropriations power and say, it's not acquiescing to this practice of either delegated power or individual staying well beyond their expiration date. And then finally, the government's argument really just boils down to on this executive practice point to urge the courts, to allow these folks to stay in power because that's what the government has done for such a long period of time. And that's neither that, that can't be right. And it isn't right. And one, I think recent example that proves that is in the 2018 Supreme court decision, Lucia against the securities and exchange commission. The question there was our SEC administrative law judges, officers of the United States. And one of the arguments on the other side was if the court were to adopt a holding that ALJs and yet in the securities and exchange commission were officers that that would call it cast out on thousands of civil servants and call into question and cast doubt upon a century of executive branch and congressional practice with respects to investigative commission. But the court implicitly, the Supreme court implicitly rejected that by holding to what the language and the law of the appointments clause required. And so at the end of the day, executive branch practice must yield in the face of clear law. Last point, I'll sit down, which is that at the core of this case, the government has thwarted Congress's attempt and it's constitutional obligation to regulate the filling of U S attorney's positions. Not only does under five 41, the default provision that requires presidential nomination and Senate confirmation, have they first submitted a nomination and withdrawn it. They have been sort of moved their way around the U S attorney specific provision in five, four, six, the F VRA, and now the delegation theory that has no time limits and would in essence permit the attorney general to set up a shadow government of delegated U S attorneys throughout the country. That just can't be right. And for those reasons, the court should affirm. Thank you. Mr. Whittaker. Thank you, your honor. Just, just a few quick points on, on the surplus age argument on the FVRA. I mean, the president on January 20th of this year, designated at least 27 individuals under a two and a three. That doesn't sound like surplusage to me. In fact, a two and a three are very commonly invoked and are meant actually to broaden the government's discretion, not to narrow it. So you shouldn't read a two and a three in any way to limit the scope of a one number two on any of them in United States attorney's offices. I don't believe there were any United States attorney's offices, your honor, but I do think that the FVRA is a generally applicable statute and you should read it as a whole to apply to all the somewhat thousands of PAS positions in the government. Number two on Southwest general council focused a lot on Southwest general implicitly resolving the pending nomination issue, but in footnote two, the Supreme court specifically flagged this issue and said that they were not deciding that issue. Southwest general is, it's not just a question of implicitly not deciding it. They told you they were not deciding it. So Southwest general is in no way contrary to the government's position on the pending nomination issue. Number three on delegation, you absolutely would have to go into conflict with Arthrex to rule against us on that issue. Arthrex was not only about three, three, four, eight, as contrary to what council said and Arthrex, because the question in Arthrex was just whether the commissioner of patents had authority to act and Arthrex did argue that three, three, four, seven, a precluded that and Arthrex rejected that argument quite properly. And that reasoning was cited approvingly by this court in Kamalitz. So you would have to go into conflict with Arthrex to resolve it against us. Secondly, this absolutely has happened before in us attorney's office in terms of delegation. And in footnote six of our opening brief, we cite examples where individuals timed out as acting United States attorney under the FDRA and continue to exercise the functions and duties of that office by delegation. And no one seemed to think that was a problem until Lena Hava got appointed to that office. Number three, council conceded that if the appointment order in this case had just said the attorney general here by delegate. Hey, Mr. Whitaker, I do hate to interrupt, but you, are you suggesting anything more than just a recitation of the history here when you said, and nothing like that. It happened until Alina Hava was nominated. One thing that I have been very much aware of and, and would have said before my own questioning began is that Ms. Hava, nothing about this involves, in my view, Ms. Hava personally, this is about, this is about the statutes. This is about the separation of powers. This is about an important position within the firmament of our government. This is about process, which is what the system that we operate under every day is all about, whether it's due process or whether it's just process provided by procedural rules or substantive law. And so I just want to say that and I'm sure my colleagues agree that this is not a personal thing. So I wanted to give you an opportunity to indicate whether that was your suggestion or not. No, Your Honor, I guess my suggestion is, is that the government, the government, what the government has done here with Alina Hava is consistent with longstanding practice. And in many of those instances, that practice went unchallenged. Oh, all right. All right. I, since you said that, I do have to ask you this. I've heard this, your argument about consistency and I didn't think that you would say that, but indulge me please with this recitation of my understanding of the recent history here and tell me where I'm wrong. And I may be at some point, we go back to March 24th and the president announces on truth social that Ms. Hava will be our interim U.S. attorney for the district of New Jersey effective immediately. Now he was wrong about effective immediately, I believe, right? Well, I think the president was not speaking in lawyerly terms, but I think the president was. Dates are something that we can refer to and not have to be a lawyer, but let's skip over that. I don't want to get into a side argument. And then attorney general Bondi swears in Ms. Hava as the interim U.S. attorney. And then on June 30, there is I believe a nomination by the president for Ms. Hava to be the United States attorney. 120 days lapsed on July 1. After that, one of the issues in one of the cases here is the signature of Ms. Hava on the indictment. Not of great concern to what's before us right now. On July 22nd, 120 days elapsed after the truth social announcements I just referenced a minute ago. Next, the district court appoints Desiree Grace, first assistant as the U.S. attorney, effective July 22, or upon expiration of 120 days after the appointment of Ms. Hava. Grace, of course, is terminated from the DOJ. Attorney general Bondi announces on X that Grace has just been removed. The president withdraws the Hava USA nomination. Ms. Hava resigns as the interim United States attorney. And then attorney general Bondi appoints Ms. Hava, special attorney to the attorney general with authorization to conduct all proceedings that USA may conduct. And we've gone over the statute that seems to be within her province. Then attorney general Bondi appoints Ms. Hava to first assistant position vacated by Grace. And then Ms. Hava purports to automatically elevate the acting U.S. attorney by virtue of being the first assistant U.S. attorney because the USA role was vacant. Was there anything in my recitation of this series of events that was inaccurate? I don't believe so, Your Honor. All right. With that said, having said and told us numerous times how common practice has played into this. And I don't care about dates. I don't care about names. Can you come up with an example of any time that such a concatenation of events in the U.S. has played into the role of the acting U.S.  Well, I guess I cannot, but I guess I would say that what that series of precise and precisely timed events is not in substance from what the executive branch has done in other contexts and analogous contexts. And we cited footnote six of our brief. Other examples were fouses timed out under the FDRA and exercise their authority. I don't think anybody challenged those delegations. And if I could just make one final point, counsel conceded that if the order here had just said, I delegate to Ms. Haba authority to conduct these criminal cases, it would be just fine. And if that's the case, it is impossible to the only issue before the court right now are the recusal orders in this case. And it's impossible to see how that conceded fact becomes different because the delegation is a wholesale one rather than a retail one. Because I guess we could do exactly what we've done here, but just having the AG issue orders for every single criminal case. And that doesn't make any sense. And it is very common for there to be wholesale delegations of the attorney general's authority. And no one has questioned us. For example, the deputy attorney general has authority, a standing delegation of all the AGs authority to supervise all of the U.S. attorneys offices. And that's not invalid. And if that's okay. And one, one answer to your point about the delegation, Pina was indicted before the delegation. Well, I believe that's right, your honor, but of course the, the dismissal of the question is her continued ability to process. Exactly. But that's that, that of course is not before the court. And I think it would be in some tension, by the way, with the Supreme court's recent jurisprudence on facial challenges to say that, because there might be some problem with the powers that was delegated more broadly by the AG that somehow would invalidate her delegation order as it applies to these specific cases. And indeed all cases in the district of New Jersey. And that's fully consistent. Mr. Low listed a litany of things that he didn't think that would be covered by a  Did you agree with that? Litany? I'm not sure I have exactly what he had in mind, but I guess I will say this, that if you could just tell us one thing that she is capable to delegate, she can't, she can't appoint officers of the United States. She can't actually, she can't approve certain kinds of FISA warrants under the, under the relevant delegation statutes. Like there are limits on the ages of bill. And I went through those initially, there are limits on the ages ability to delegate functions to subordinate officials that are imposed, not just by the FBRA, but also other statutes that just cover those delegations. Wouldn't relate necessarily to the work, to her work as the acting or delegated United States attorney in New Jersey. I agree with that. I agree with that, your honor, but I actually think that that doesn't matter and there are substantial limits. They may not necessarily be implicated by this specific case, but the court has to interpret the statute consistently across all the offices in the executive branch and all the attorney general's powers. And if it, if the court does that Alina Hobbit is fully empowered to supervise these criminal cases by delegation in the same way that assistant United States attorneys at the district court observed are fully authorized to conduct criminal proceedings by dint of authority that, that traces back directly to the attorney general, not just by the way, by virtue of delegating us attorney's authority, but also delegated ages own authority to supervise criminal case and conduct litigation as defined by the statutes in 20 USC in the five hundreds. Are there any further questions that I can answer for the court? We would ask that the disqualification orders be reversed. Thank you. Thank you. Thank you. Thank you for everybody's briefs and arguments. Great day.